# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**LINDA A.,**

    **Plaintiff,**

  v.                                       **Civil Action 3:23-cv-208**
                                               **Judge Michael J. Newman**
                                               **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Linda A., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

I.     BACKGROUND

Plaintiff previously applied for SSI on April 3, 2014, October 4, 2017, and March 24, 2018. Her latest application proceeded to an administrative hearing, and ALJ Stuart Adkins ("ALJ Adkins") issued an unfavorable decision on January 10, 2020. (R. at 15, 73–101).

Then, in June 2021, Plaintiff protectively filed her current application for SSI, alleging that she was disabled beginning August 1, 2013, due to back issues at L3 and S4, nerve damage in back, PTSD (post-traumatic stress disorder), survivors guilt, anxiety, depression, bipolar disorder, chronic migraines, high blood pressure, memory issues, degenerative disc disease, fibromyalgia, deterioration of the lumbar, arthritis of spine, heart condition, sleep apnea, acid reflux, and COPD (chronic obstructive pulmonary disease). (R. at 212–19, 236). After her application was denied

initially and on reconsideration, Administrative Law Judge ALJ Laura Chess ("ALJ Chess") heard the case on May 10, 2022. (R. at 42–72). Ultimately, ALJ Chess denied benefits in a written decision on July 20, 2022. (R. at 12–41). When the Appeals Council denied review, that denial became the Commissioner's final decision. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on July 24, 2023 (Doc. 1), and the Commissioner filed the administrative record on September 26, 2023 (Doc. 8). The matter has been briefed and is ripe for consideration. (Docs. 10, 11, 12).

### A. Relevant Hearing Testimony

ALJ Chess summarized Plaintiff's hearing testimony as follows:

At the hearing, [Plaintiff] testified that she weigh[t]s 210 pounds on a 5' 4.5" frame. She has a driver's license and does drive daily, with no restrictions. She takes medications with no side effects, except from Lyrica, and said she feels slow and off balance. She said that with regard to her current day to day functioning since the last decision, overall, she is doing worse. She said she had surgery on her back, and started having falls, loses all control of her legs, and would have to lie on the floor and cry it out for fifteen to twenty minutes. She has had three falls since her surgery. She has a hard time walking more than ten minutes and she has to walk more than ten minutes, she uses a cane. [Plaintiff] reported she is currently experiencing pain under S1 down her right leg, both hips, up her spine and into her neck. It has been consistent, and while the locking up of her back and loss of control of her legs have improved, and has not happened since the surgery, the rest remains the same. She takes pain medication, ices it, heats it, uses icy hot, and rests. She needs to change positions. She could sit for ten minutes before she has to change positions, and get up and stand and walk for a few minutes. She has had changes in her pain medication and said her pain management doctor just increased her dose. She has migraines and testified that without having auto the injector that she does monthly, the pressure builds up and it is two to three times a week. If she does not have the injection she has to go to the ER. She said she went to the emergency room last, in April. She said that her migraines are gradually getting worse again, with more pressure in her head. She said she has pain in her neck, which her doctor said is probably causing more pressure and causing the migraine. With the pain in her neck, she cannot use her right arm very well and has reduced strength. She also had carpal tunnel and cubital tunnel releases, but said she still has pain, right more than left. She said her hands get cold. She has difficulty with memory, and it has worsened over the past two years. Her words do not come out like they should. [Plaintiff] further testified she takes two or three naps a day.

(R. at 23–24).

### B. Relevant Medical Evidence

ALJ Chess summarized Plaintiff's medical records as to her relevant physical and mental impairments, which the Undersigned discusses in detail below. (R. at 24–29).

ALJ Chess also summarized and evaluated the medical opinions pertaining to Plaintiff's physical and mental impairments as follows:

> The State disability medical consultant Dr. Siddiqui, at the initial determination, and Dr. McKee, on reconsideration, adopted the prior residual functional capacity (RFC) (B3A, B4A). This opinion is partially persuasive, because it is generally supported by the record reviewed, but it is not entirely supported by the record as a whole, which shows the claimant had continued back pain, and underwent back surgery in December 2021, with continued complaints of right leg pain. She also has complaints of neck pain and imaging shows degenerative changes of the cervical spine. Chondromalacia of the left patella is also noted in the record and the claimant is obese with a body mass index over 30 (e.g., B13F, B14F). Thus, the record supports greater postural limitations as set forth in the RFC. Nevertheless, I note that the vocational expert testified that the same representative occupations could be performed under both the prior and current RFC.
>
> The State disability psychological consultant Dr. Delcour at the initial level and Dr. Waggoner, at reconsideration, opined [Plaintiff] had moderate limitations throughout the B criteria, adopting the prior RFC (B3A, B4A). This opinion is persuasive because it is generally supported by the record reviewed and consistent with the record as a whole, showing [Plaintiff] has continued treatment, with therapy and medication, and medication is effective (B4F, B12F, B16F, B23F). Treatment notes also show that other than limited memory, she otherwise has normal mental status examinations. I did consider[] the impact of [Plaintiff]'s pain and fatigue on her ability to perform work-related mental activities. Additionally, despite a small difference in language in regarding simple routine tasks, versus understanding, remembering, and carrying out simple instructions, the vocational expert testified that the same representative occupations could be performed under both the prior and current RFC.

(R. at 29–30).

### C. ALJ Chess's Decision

ALJ Chess found that Plaintiff has not engaged in substantial gainful employment since

3

June 10, 2021, the application date. (R. at 18). ALJ Chess also determined that Plaintiff suffered from the following severe impairments: fibromyalgia, degenerative disc disease, history of bilateral carpal tunnel syndrome, chondromalacia of the left patella, chronic pain syndrome, cervical radiculopathy, rheumatoid arteritis, migraines, obstructive sleep apnea, hypertension, asthma, obesity, posttraumatic stress disorder (PTSD), anxiety, bipolar disorder, and attention deficit hyperactivity disorder (ADHD). (*Id.*). Still, ALJ Chess found that none of Plaintiff's impairments, either singly or in combination, meet or medically equal a listed impairment. (R. at 19).

> ALJ Chess assessed Plaintiff's residual functional capacity ("RFC") as follows:
>
> After careful consideration of the entire record, the [ALJ] find[s] that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday. She needs to alternate positions between sitting and standing/walking after 15 minutes, while remaining at the work station and on task. She could never climb ladders, ropes, or scaffolds and could occasionally climb ramps and stairs. [Plaintiff] could occasionally balance as defined by the Selected Characteristics of Occupations (SCO), and occasionally stoop. [Plaintiff] could occasionally reach overhead with the dominant right upper extremity and frequently handle, finger, and feel with the bilateral upper extremities. [Plaintiff] should avoid concentrated exposure to atmospheric conditions, as defined by the SCO and have no exposure to moving mechanical parts or high exposed places. [Plaintiff] could understand, remember, and carry out simple instructions. There can be no production rate work, such as work on an assembly line, with only occasional changes in a routine work setting. [Plaintiff] could occasionally interact with co-workers and supervisors; and no interaction with the public.

(R. at 22–23).

Upon "careful consideration of the evidence," ALJ Chess found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 24).

ALJ Chess determined that Plaintiff is unable to perform any past relevant work. (R. at

31). ALJ Chess relied on testimony from a Vocational Expert ("VE") to determine that given Plaintiff's age, education, work experience, and RFC, she could perform light exertional, unskilled jobs that exist in significant numbers in the national economy, such as an office mail clerk, copy machine operator, or office helper. (R. at 31–33). Consequently, ALJ Chess concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since June 10, 2021, the date the application was filed (20 CFR 416.920(g))." (R. at 33).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015). But "[i]f the ALJ commits an error of law, the court must reverse and remand, 'even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011)).

### III. DISCUSSION

In her Statement of Errors, Plaintiff contends that ALJ Chess erred by using the wrong legal standard and by relying on flawed opinion evidence, thus creating an unwarranted additional procedural burden for her to overcome. (Doc. 10 at 5–15). More specifically, Plaintiff argues that ALJ Chess premised her entire review on the belief that she was bound by ALJ Adkins' prior findings, absent new and material evidence or changed circumstances, and then she generally adopted ALJ Adkins' findings. (*Id.*). Plaintiff says this error tainted ALJ Chess's entire decision, and the fact that she provided a review of the newly submitted evidence and imposed a slightly different RFC is immaterial to the error of law. (*Id.* at 14).

The Commissioner counters that ALJ Chess's decision shows that she did not consider the previous decision binding; she provided a detailed discussion of the medical and other evidence from the relevant period; and she assessed a more restrictive RFC than assessed in the previous decision, thus providing the required "fresh look" at Plaintiff's current claim as the Sixth Circuit requires. (Doc. 11 at 4–8).

**1. *Drummond*, *Earley*, and Fresh Review**

In *Drummond v. Commissioner of Social Security*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997). In that case, a claimant's initial claim for SSI was denied when an ALJ found that she was capable of sedentary work. *Id*. at 838. When the claimant later re-filed her disability claim, a second ALJ found that she was capable of medium-level work—unlike the sedentary RFC finding of the first ALJ—and denied the re-filed claim. *Id*. at 839. After explaining that "*[r]es judicata* applies in an administrative law context following a trial type hearing," the Sixth

Circuit held that the second ALJ was bound by the sedentary RFC determination of the first ALJ because there was no new or additional evidence of an improvement in the claimant's condition. *Id*. at 841–842. The Sixth Circuit reasoned that "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id*. The Social Security Administration subsequently issued an Acquiescence Ruling explaining how the ruling in *Drummond* would be applied to claims in the Sixth Circuit:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim . . . unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

AR 98-4(6), *Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II and XVI of the Social Security Act*, 1998 WL 283902, at *3 (June 1, 1998).

The Sixth Circuit also subsequently clarified the scope of *Drummond* in *Earley v. Commissioner of Social Security* by reiterating that *res judicata* applies to administrative proceedings. 893 F.3d 929 (6th Cir. June 27, 2018). The *Earley* Court explained that when a claimant files a later application covering the same period as an earlier application, *res judicata* applies absent good cause to revisit the earlier determination. *Id*. at 933. But the *Earley* Court explained that *res judicata* does not apply when a claimant files a subsequent application seeking benefits for a different period. Instead, "[w]hen an individual seeks disability benefits or a distinct period of time, each application is entitled to review." *Id*. The *Earley* Court cautioned, however, that "fresh review is not blind review." *Id*. at 934. Although an ALJ evaluating a subsequent application is not bound to follow a previous determination, the ALJ may "nevertheless consider what an earlier judge did if for no other reason than to strive for consistent

7

decision making." *Id*. Accordingly, "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id*. at 933.

Since then, this Court has said that *Earley* "clarified" the Court's decision. *Teasley v. Comm'r of Soc. Sec.*, No. 2:18-cv-1079, 2019 WL 2559514 at *5 (S.D. Ohio June 21, 2019). "The Sixth Circuit explained that 'the key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications'—do not prohibit the Social Security Administration 'from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in a prior proceeding.'" *Id.* (citing *Earley*, 893 F.3d at 933). Therefore, as this Court has noted, "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.* In fact, in *Dugan v. Commissioner of Social Security*, an early post-*Earley* decision, the Sixth Circuit cited to *Drummond* and noted that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 742 F. App'x 897, 901–02 (6th Cir. 2018). The Court explained that "[i]n such cases, '[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.'" *Id.* The Court found that the ALJ's pre-*Earley* analysis satisfied the legal standard because she ultimately found new and material evidence of medical improvement which meant she was not bound by a prior ALJ's determination. *Id.* Said simply, citation to *Drummond* was not in and of itself enough to warrant remand. This Court, as well as other courts in the circuit, have come to the same conclusion.

In *Parsons v. Commissioner of Social Security*, for instance, the Court noted that the ALJ "failed to mention *Earley* even though it is applicable here. Nevertheless, [the ALJ] followed the precepts in *Early* [sic] by finding that new evidence undermined ALJ Bruce's RFC assessment." No. 2:20-cv-2594, 2021 WL 1015910, at *7 (S.D. Ohio Mar. 17, 2021). The same was true in *Mitchell v. Commissioner of Social Security*, where the United States District Court for the Eastern District of Michigan explained that "the Court is less concerned as to whether the ALJ merely stated the wrong legal standard, and more concerned as to whether the ALJ applied the wrong legal standard." No. 20-13414, 2022 WL 265869, at *2 n.3 (E.D. Mich. Jan. 28, 2022). And "while a post-*Earley* ALJ's recitation of the pre-*Earley* standard raises a yellow flag, it is nevertheless possible that such a post-*Earley* ALJ decision could functionally comply with *Earley* if the ALJ gave the evidence a fresh look." *Id.*; *see also Civitarese v. Comm'r of Soc. Sec.*, No. 1:19-cv-2015, 2020 WL 4366077, at *14 (N.D. Ohio July 30, 2020).

So, while citation to *Drummond* without *Earley* raises a yellow flag, the ultimate question is whether the ALJ freshly reviewed the evidence.

   **2. ALJ Chess's Review**

In discussing her consideration of *Drummond*, ALJ Chess determined:

In the case of Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), the court held that absent evidence of an improvement in a claimant's condition, a subsequent Administrative Law Judge must adopt certain findings of a previous Administrative Law Judge (see also Dennard v. Secretary of Health and Human Services, 907 F.2d 598 (6th Cir. 1990)(holding prior findings concerning work experience, past relevant work requirements, education level, and age to be given preclusive effect)). In accordance with Acquiescence Ruling 98-4(6), adjudicators must adopt a finding required at a step in the sequential evaluation process and made by an Administrative Law Judge or the Appeals Council in a final decision on a prior claim, unless there is new and material evidence relating to such a finding or there has been a change in the law. Furthermore, new evidence will be considered material only if it both differs from that presented in the prior claim and warrants a finding different than that made in the decision on the prior claim (Acquiescence Rulings 98-3(6) and 98-4(6)). New

> and material evidence warrants a change to certain findings, including [Plaintiff]'s medically determinable impairments and residual functional capacity, as detailed below.

(R. at 16).

Then, in determining Plaintiff's RFC, ALJ Chess again discussed *Drummond*:

> [The RFC] finding is consistent with Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997) and Dennard v. Secretary of Health and Human Services, 907 F.2d 598 (6th Cir. 1990), which hold that when adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as a prior claim, I must adopt the finding of the previous Administrative Law Judge unless there is new and material evidence or change in the law. In this case, I generally adopt the findings of the previous Administrative Law Judge, except I find that since the last adjudication, the claimant has more restrictive postural limitations, including climbing ladders, ropes, and scaffolds, balancing, and stooping, for the reasons set forth below (B1A).
>
> ***
>
> [T]he findings of the prior ALJ decision have been considered, and while generally adopted, I find greater postural limitations supported by the record due to a combination of her impairments, most notably, her recent back surgery and cervical radiculopathy, but otherwise adopt the findings that [Plaintiff] has not engaged in substantial gainful activity, does not have an impairment or combination of impairments that meets or equals a listing, is a younger individual, with no transferable job skills, past relevant work as a stock selector (though she now has additional past relevant work as a product assembler), and while she cannot perform her past work, there are other representative jobs in the economy that [Plaintiff] could perform (B1A). Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997) and Dennard v. Secretary of Health and Human Services, 907 F.2d 598 (6th Cir. 1990).

(R. at 23, 30–31).

Plaintiff is correct that ALJ Chess framed her decision using the legal standard in *Drummond* and Acquiescence Ruling 98-4(6), rather than *Drummond* as clarified by *Earley*. (Doc. 10 at 14). Instead of providing that ALJ Atkins's prior findings were a legitimate, albeit not binding, consideration, ALJ Chess stated that she "must adopt" the prior findings absent new and material evidence. (R. at 23). Plaintiff contends that by using the wrong legal standard, ALJ

10

Chess created an unwarranted procedural burden that she needed to overcome, requiring remand. (Doc. 10 at 14).

Yet, as explained above, an ALJ's erroneous citation to *Drummond* without reference to *Earley* does not, on its own, warrant reversal. *See Christina S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-298, 2023 WL 4557045, at *8 (S.D. Ohio July 17, 2023). While citing the wrong legal standard may raise a "yellow flag," the ultimate question before this Court is "whether the [adjudicator] gave a fresh review to the evidence" in a claimant's case. *Mark D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-58, 2023 WL 312795, at *5 (S.D. Ohio Jan. 19, 2023) (citing *Mitchell*, 2022 WL 165869, at *2 n.3), *report and recommendation adopted*, No. 3:22-CV-58, 2023 WL 2479792 (S.D. Ohio Mar. 10, 2023). In other cases, discussing new medical records provided evidence that the ALJ freshly reviewed a claimant's case. *Brandon M. v. Comm'r of Soc Sec.*, No. 3:22-CV-167, 2023 WL 6348406, at *3 (S.D. Ohio Sept. 29, 2023). Adding severe impairments that were not included in a claimant's prior disability determination was also "a strong indicator that the current ALJ conducted a fresh look at the evidence." *Id.* (citing *Sadler v. Comm'r of Soc. Sec.*, No. 18-11689, 2019 WL 4892419, at *6 (E.D. Mich. Aug. 16, 2019)). Here, although ALJ Chess failed to cite to *Earley* and noted that she "generally adopt[ed]" the findings of ALJ Adkins (R. at 23), these factors are present, and her reasoning shows that she reviewed the new evidence to give Plaintiff's application the required "fresh review." *Earley*, 893 F.3d at 933.

ALJ Chess first found that "[n]ew and material evidence" established that Plaintiff had four additional severe impairments that ALJ Atkins previously did not find: chondromalacia of the left patella, chronic pain syndrome, cervical radiculopathy, and rheumatoid arteritis. (R. at 18). ALJ Chess then "generally adopt[ed]" the RFC finding of ALJ Atkins, but also found "that

11

since the last adjudication [Plaintiff] has more restrictive postural limitations, including climbing ladders, ropes, and scaffolds, balancing, and stooping . . . ." (R. at 23). In coming to this conclusion, ALJ Chess evaluated medical evidence that did not exist at the time of Plaintiff's previous disability determination, as well as Plaintiff's testimony from her May 2022 hearing. ALJ Chess considered Plaintiff's testimony that in December 2021 she had surgery on her back because of pain and loss of leg control but has still experienced back pain and difficulty walking that required increased doses of medication and use of a cane. (R. at 23–24, citing R. at 50, 56–58). ALJ Chess also highlighted Plaintiff's testimony about migraines that require a monthly injection, carpal tunnel that requires releases, cold hands, and declining memory. (R. at 24, citing R. at 59–61).

ALJ Chess then considered physical and objective examination findings related to Plaintiff's physical impairments since her alleged onset date. Though she noted Plaintiff's history of chronic pain, degenerative disc disease of the lumbar spine, cervical radiculopathy, bilateral carpal tunnel syndrome, fibromyalgia, chondromalacia of left patella, and rheumatoid arteritis, ALJ Chess highlighted that "there is little to no evidence regarding these conditions since the last decision was issued." (R. at 24). ALJ Chess then chronicled, in detail, Plaintiff's history of lumbar spine pain during the relevant period, specifically noting that examinations showed improvement with treatment and physical therapy. (R. at 24, citing *e.g.*, R at 368, 387, 479, 480, 486, 492, 775, 800, 821, 1134, 1290, 1297, 1424, 1427, 1901). ALJ Chess highlighted examinations of Plaintiff's lumbar spine that showed reduced range of motion, pain, tenderness, numbness, and spasms. (R. at 24, citing *e.g.*, R. at 511, 524, 539, 1054, 1365, 1423–24, 1426–27, 1429–30, 1432, 1435, 1438–39, 1442, 1446, 1449, 1452–53). She stated that a neurosurgical evaluation showed intact cranial nerves, full motor strength throughout the extremities, intact

sensation and deep tendon reflexes, no clonus bilaterally, no ataxia, and preserved sagittal balance, although Plaintiff had antalgic gait. (R. at 25, citing R. at 1057, 1419). ALJ Chess considered that an x-ray, CT scan, and MRI of Plaintiff's lumbar spine showed no evidence of compression fractures or abnormality, but there was lumbar spondylosis and degenerative findings at L5-S1, dehydration of L4-5 and L5-S1 consistent with degenerative disc disease, complete loss of disc height at L5-S1 causing bilateral foramina stenosis, Modic endplate changes at L5-S1, and significant facet arthropathy at L4-5 and L5-S1 with some effusive facet changes. (R. at 25, citing R. at 601–602, 604, 954–955, 1054). ALJ Chess also considered that Plaintiff "underwent anterior lumbar interbody fusion at L4-S1 in December 2021" and post operative MRIs showed discectomy with fusion at L5-S1 and mild disc disease at L4-5. (R. at 25, citing R. at 1281, 1310, 2086, 2103–04). But the MRIs also showed "[quite substantial] overall height restoration at L5-S1," no significant compression on L4–L5, and no neural reasons for her complained leg pain. (R. at 25–26, citing 2085 ("Most likely [Plaintiff's right leg pain] is vascular in origin and should improve over some time.")).

ALJ Chess further noted an examination showing reduced cervical spine range of motion with pain and tenderness, but also other examinations that showed normal cervical spine range of motion and only some degenerative changes. (R. at 26, citing R. at 1134, 1166, 1206, 1365, 1423, 1732, 1820–21, 2086, 2114). She emphasized that though Plaintiff received cubital and carpal tunnel releases in 2019 and 2020, her "only complaints she had following [the] surgeries" were of temperature changes to her hands that she treated with Lyrica. (R. at 26, citing R. at 321, 645–647, 2095).

ALJ Chess also considered clinical examinations of Plaintiff concerning her history of hypertension, which generally evidenced normal cardiovascular findings. (R. at 26, citing *e.g.*, R.

13

at 475, 488, 679, 687, 701, 745, 840, 859, 898, 937, 948, 961, 1075, 1110, 1487).  ALJ Chess emphasized examinations relating to Plaintiff's history of obstructive sleep apnea but noted that more recent reports indicate Plaintiff's lifestyle changes remedied this condition.  (R. at 27, citing R. at 363, 367, 371, 377).  And she considered reports about Plaintiff's asthma, which generally evidenced normal findings, especially after January 2021 when Plaintiff stopped smoking.  (R. at 27, citing *e.g.*, R. at 363, 368, 372, 480, 488, 671, 678, 755, 1071, 1365, 1642, 1698, 1704, 2098, 2102).  ALJ Chess additionally noted Plaintiff's complaints about migraines.  Though Plaintiff experienced improvements in her migraine symptoms with medication in 2021, ALJ Chess highlighted that beginning in May 2022, Plaintiff had an increase in the frequency and severity of migraines for which she sought emergency room treatment and physical therapy.  (R. at 27–28, citing R. at 2033–34, 2112–15, 2119).

Furthermore, ALJ Chess considered Plaintiff's complaints about her mental health, memory, and mental status.  She noted that though Plaintiff is in counseling and takes medication for depression and anxiety, her symptoms were generally stable.  (R. at 28, citing *e.g.*, R. at 413, 453, 1247, 1673, 2087–88).  And ALJ Chess considered that some reports noted that Plaintiff had "limited memory on examinations," but at other times that she had intact memory and her mental status examinations were "generally unremarkable."  (R. at 28–29, citing *e.g.*, R. at 368, 372, 387, 392, 395, 402, 415–416, 423–424, 479–480, 486, 492–493, 1057, 1144, 1150, 1242, 1250, 1258, 1419, 1432, 1676, 1723, 2089–90).

After considering this medical evidence, ALJ Chess next considered medical opinions and prior administrative medical findings.  She found the state disability medical consultants' opinions only partially persuasive because they adopted the prior RFC, but the ALJ found evidence in the record which supported greater postural limitations because of Plaintiff's back

pain, neck pain, degenerative changes of the cervical spine, and chondromalacia of the left patella. (R. at 29–30, citing R. at 110–111, 118). However, she found the state disability psychological consultants' opinions adopting the prior RFC persuasive as they were generally supported by the record. (R. at 30, citing R. at 111, 118–119).

In an effort to undermine the ALJ's analysis, Plaintiff relies on cases where courts have found that an ALJ appeared to be bound or otherwise hamstrung by prior decisions in contravention of *Earley*. *See, e.g.*, *Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723, at *4 (S.D. Ohio Mar. 8, 2023) (finding that where an ALJ treats a prior RFC determination "as a mandatory starting place for his own RFC determination[,]" *Earley* is violated); *Robert K. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-00091, 2023 WL 5662785, at *6 (S.D. Ohio Sept. 1, 2023) ("[T]his Court holds that although ALJs may (and should) consider a prior ALJ decision, they may not use that prior decision as a starting point for their analysis or otherwise presume that it will dictate the outcome of the pending application."). And Plaintiff points to cases where this was true even when an ALJ imposed a different RFC than the prior ALJ. *See, e.g.*, *Dunn v. Comm'r of Soc. Sec.*, No. 1:17-CV-634, 2018 WL 4574831, at *3 (W.D. Mich. Sept. 25, 2018) (remanding where an ALJ did not "satisf[y] the analytical framework set forth in *Earley*" when he explained "he was required to adopt ALJ Moscow Michaelson's RFC findings and then had to explain why he was not bound by them" in determining a different RFC); *Brecheisen v. Comm'r of Soc. Sec.*, No. 1:20-CV-750, 2021 WL 6278477, at *5 (W.D. Mich. Dec. 21, 2021) ("Simply put, ALJ Tjapkes did not take a fresh look at Plaintiff's condition and articulate his own RFC for Plaintiff. Instead, ALJ Tjapkes considered ALJ MacDonald's RFC a mandatory starting point and simply added one additional limitation thereto."), *report and recommendation adopted*, No. 1:20-CV-750, 2022 WL 43700 (W.D. Mich. Jan. 5, 2022).

15

But each decision must be evaluated on its own merit. In this case, the fairest read of the ALJ's opinion is that she reviewed the evidence independently—without any thumb on the scale—and crafted a record-based RFC. That is all that is required, even if ALJ Chess cited *Drummond* without *Earley*. *See Tammy T. v. Comm'r of Soc. Sec.*, No. 1:22-cv-248, 2023 WL 3432299, at *6 (S.D. Ohio May 13, 2023) (finding that though the ALJ did not mention *Earley* and adopted the former ALJ's mental RFC, the new ALJ had provided the "fresh look to which plaintiff was entitled[ ]" by thoroughly reviewing the evidence of record, including records post-dating the prior ALJ's determination); *Dennis D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-202, 2023 WL 2943822, at *8 (S.D. Ohio Apr. 14, 2023) ("Because ALJ Beatty reached a different conclusion than ALJ Kenyon's prior decision, and because ALJ Beatty based his conclusion on medical and psychological information and records obtained after ALJ Kenyon's 2018 decision, it is apparent that ALJ Beatty provided the fresh look to which plaintiff was entitled."), *report and recommendation adopted sub nom. Dennis D. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-00202, 2023 WL 3979215 (S.D. Ohio June 13, 2023); *Brent v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 159118, 2018 WL 5118598 (E.D. Mich. Aug. 21, 2018) (analyzing whether the ALJ took seriously his duty to review the evidence anew and recommending affirmance despite the ALJ's use of the *Drummond* framework), *report and recommendation adopted by* 2018 U.S. Dist. LEXIS 157841, 2018 WL 4403418 (E.D. Mich. Sept. 17, 2018). And although ALJ Chess mentions ALJ Adkins's decision multiple times in her own, as the Sixth Circuit has said, that is good judging. *Earley*, 893 F.3d at 933 (noting that "a later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making").

Plaintiff further asserts that ALJ Chess's determination was premised on flawed opinion evidence, because she found the state agency psychologists' opinions persuasive, yet those state

agency psychologists impermissibly adopted ALJ Adkins's prior RFC pursuant to Acquiescence Ruling 98-4(6) and *Drummond*. (Doc. 10 at 9–10; *see* R. at 111, 118–119). Plaintiff cites to authorities that hold that the *Earley* fresh look requirement extends equally to state agency reviewers as it does ALJs. *See Parrish v. Comm'r of Soc. Sec.*, No. 3:17-CV-411, 2019 WL 4667730, at *2 (S.D. Ohio Sept. 25, 2019) ("[A]s a matter of common sense, the holding in Earley must be extended to those reviewing doctors. Like the ALJ, they must take a "fresh look" at the new and additional evidence to determine whether it supports the new application for a more recent time period."); *Nadia A. T.*, 2023 WL 2401723, at *4. And without a fresh look, the reviewers' opinions "do not constitute substantial evidence in support of the ALJ's findings." *Parrish*, 2019 WL 4667730, at *2 (citation and internal quotation marks omitted); *but see Drummond*, 126 F.3d at 841 ("Res judicata applies in an administrative law context following a trial type hearing.")

Yet the Undersigned need not explore if the state agency reviewers provided Plaintiff with a fresh look here. Even if ALJ Chess relied on the state agency psychologists' opinions that were impermissibly formed, that error is harmless. ALJ Chess noted that the opinions were persuasive not because they adopted the prior RFC, but because they were "generally supported by the record reviewed and [were] consistent with the record as a whole, showing [Plaintiff] has continued with treatment, with therapy and medication, and medication is effective." (R. at 30); *cf. Robert K.*, 2023 WL 5662785, at *6 (remanding where the ALJ found state reviewers' opinions persuasive because "no evidence in the medical records substantiate[s that Plaintiff] would require additional limitations from the previous decision."). And, as explained above, ALJ Chess considered a host of clinical examinations of Plaintiff's generally stable mental health and mental status that constitute substantial evidence in support of her ultimate findings. (*See* R. at

17

368, 372, 387, 392, 395, 402, 413, 415–416, 423–424, 453, 479–480, 486, 492–493, 1057, 1144, 1150, 1242, 1247, 1250, 1258, 1419, 1432, 1676, 1723, 2087–90).

Accordingly, the Undersigned finds that ALJ Chess provided Plaintiff's application with a fresh look as required by *Earley*. She reviewed, in detail, Plaintiff's new medical records, found appropriate additional severe impairments, and determined additional restrictions in Plaintiff's RFC were warranted. Substantial evidence supports her decision.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

      IT IS SO ORDERED.

Date:   January 23, 2024                               /s/ Kimberly A. Jolson
                                                     KIMBERLY A. JOLSON
                                                     UNITED STATES MAGISTRATE JUDGE